# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

—————————————

Nº 03-CV-5978 (JFB) (KAM)

—————————————

VALERIE KELSEY, AND
THEODORE GODDARD,
INDIVIDUALLY, AND AS CO-ADMINISTRATORS OF THE ESTATE OF CURTIS GODDARD,

Plaintiffs,

VERSUS

THE CITY OF NEW YORK,
P.O. THOMAS MARRONE, SHIELD #07784,
SERGEANT GEORGE KALLAS, SHIELD #01144,
LT. JAMES MARRON,
P.O. MICHAEL SYKORA, SHIELD #18496,
P.O. CORY FINK, SHIELD #14713,
P.O. MARTIN HALLIGAN, SHIELD #18367,
P.O. PAUL BERNAL, SHIELD #10349,
P.O. MATTHEW LINDNER, SHIELD #19417, AND
P.O. SHAWLINE SENIOR, SHIELD #02385,

Defendants.

—————————————

MEMORANDUM AND ORDER
May 7, 2007

—————————————

JOSEPH F. BIANCO, District Judge:

Plaintiffs Valerie Kelsey and Theodore Goddard bring this action on behalf of themselves and the estate of Curtis Goddard (collectively, "plaintiffs"), alleging, *inter alia*, claims for violation of Goddard's civil rights under 42 U.S.C. § 1983 and a pendent wrongful death/negligence claim under state law.

On December 18, 2006, this Court granted defendants' motion for summary judgment as to plaintiffs' federal claim, and declined to exercise jurisdiction over plaintiffs' remaining state law claims. On January 30, 2007, plaintiffs moved for reconsideration of the Court's decision. For the reasons set forth below, plaintiffs' motion is denied.

## I. BACKGROUND

### A. The Facts

The Court presumes the parties' familiarity with the facts of this case. Briefly, however, this case arises from the attempted detainment by police of Curtis Goddard ("Goddard") on August 15, 2002. That day, Goddard arrived at and entered an apartment on Beach Channel Drive ("the apartment") that was occupied by Maria Buffamante, her children, and her friends Tyisha Safford, Leonar Jesus Espinal and an individual known as "Blue." (*See* Defs.' 56.1 Stmt., ¶ 8.) After Goddard entered the apartment, Buffamante, Espinal and "Blue" asked Goddard to leave the premises. (*See id.*, ¶ 12.) Goddard refused, and brandished a firearm. (*See* Defs.' 56.1 Stmt., ¶ 13; *see also* Pls.' 56.1 Stmt., ¶ 13(b).)

New York City Police Department Sergeant George Kallas and Police Officers Thomas Marrone, Michael Sykora, Cory Fink, Martin Halligan, and Paul Bernal responded to a call regarding a dispute with a firearm at the apartment. (*See* Defs.' 56.1 Stmt., ¶ 5.) The officers entered the apartment and observed Goddard running towards the kitchen. (*See* Defs.' 56.1 Stmt., ¶ 16.) The officers attempted to arrest Goddard in the kitchen, but he resisted and refused to be handcuffed. (*See id.*, ¶ 17.) The officers were eventually successful in restraining and handcuffing Goddard. (*See id.*, ¶ 22.) The officers searched Goddard and seized a sock filled with ammunition, a ski mask, a gun, and a razor blade. (*See* Defs.' 56.1 Stmt., ¶¶ 22-23, 28; *see also* Pls.' 56.1 Stmt., ¶¶ 22-23, 28.)

Goddard was escorted out of the apartment with his hands cuffed behind his back. (*See* Defs.' 56.1 Stmt., ¶ 24.) As he was being escorted out of the apartment, Goddard attempted to grab Officer Bernal's gun, while exclaiming "shoot me, kill me." (*See id.*, ¶ 25.) Officer Marrone held Goddard until he was able to confirm that Officer Bernal had control of his gun. (*See id.*, ¶ 26.) Goddard was brought out into the hallway, and was positioned facing the wall, approximately four to five feet from a stairwell door. (*See* Defs.' 56.1 Stmt., ¶ 27; *see also* Pls.' 56.1 Stmt., ¶ 27(a).) While placed facing the wall, Goddard was surrounded by Officers Sykora, Fink, Hallagan and Bernal in a semi-circle. (*See* Defs.' 56.1 Stmt., ¶ 29.) Sergeant Kallas instructed the officers to physically hold onto Goddard. (*See id.*, ¶ 30.) Pursuant to that order, Officer Sykora held onto Goddard while he stood against the wall. (*See id.*, ¶ 32.)

Sergeant Kallas requested that the Emergency Services Unit and an ambulance respond to the scene to assist with an emotionally disturbed person. (*See* Defs.' 56.1 Stmt., ¶ 31; *see also* Pls.' 56.1 Stmt., ¶ 31.) Kallas and Lieutenant Marron then went down the hall to interview the occupants of the apartment. (*See* Defs.' 56.1 Stmt., ¶ 39.) After approximately five minutes, Goddard was turned around so that he faced the surrounding officers. (*See* Defs.' 56.1 Stmt., ¶ 33.) Officer Sykora released his physical hold on Goddard. (*See* Defs.' 56.1 Stmt., ¶ 35.) Goddard then made a sudden move at Sykora, and Officer Fink pushed Sykora out of the way, in order to prevent contact between the two. (*See* Defs.' 56.1 Stmt., ¶¶ 36-37; *see also* Pls.' 56.1 Stmt., ¶¶ 36-37.) Goddard proceeded to escape from the officers, and ran towards the stairwell door. (*See* Defs.' 56.1 Stmt., ¶ 37.) According to defendants, Officer Shawline Senior was standing next to the stairwell door and attempted to grab Goddard as he ran through the stairwell door, but failed. (*See* Defs.' 56.1

Stmt., ¶ 38.)

Sykora, Fink, Bernal, Halligan, Marrone, Lindner and Marron immediately chased after Goddard as he ran up the stairway to the rooftop of the building while rear-cuffed. (*See* Defs.' 56.1 Stmt., ¶ 42.) Officer Sykora observed Goddard lean over a fence on the roof, and then twist his body so that he fell off the rooftop. (*See id.*, ¶ 44.) Goddard died as a result of injuries he sustained from the fall. (*See* Okoli Decl., Ex. O.)

## B. Procedural History

Plaintiffs, as administrators of Goddard's estate, filed a complaint in this action on November 25, 2003. On July 24, 2006, defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On December 18, 2006, this Court issued a Memorandum and Order granting defendants' motion for summary judgment (hereinafter, the "Order"), and entered judgment against plaintiffs.

Subsequently, on December 22, 2006, plaintiffs sought and obtained an extension of time, to January 30, 2007, to file a motion for reconsideration of the Order. Prior to filing that motion, on January 17, 2007, plaintiffs filed a notice of appeal to the Second Circuit Court of Appeals. Thereafter, on January 30, 2007, plaintiffs filed a motion, "pursuant to Local Civil Rule 6.3, for reconsideration and/or reargument of the Order."[1] (Pls.' Notice of Mot., dated Jan. 30, 2007.)

---

[1] Plaintiffs filed an initial brief in support of their motion for reconsideration, to which defendants submitted a response. By letter dated April 30, 2007, counsel for plaintiffs indicated that he would not be filing a reply brief, as he did "not wish to add anything else to plaintiffs' previous submissions." (Pls.' April 30, 2007 Ltr., at 1.)

## II. THE INSTANT MOTION

Plaintiffs bring the instant motion under Local Civil Rule 6.3 and assert that this Court should construe it as a motion for reconsideration under Rule 59(e). As such, according to plaintiffs, the appeal in this case is not "effective" until the instant motion is disposed of by the Court. (Pls.' Feb. 13, 2007 Ltr., at 2.) For the reasons set forth below, this Court disagrees, and finds that, because the instant motion must be construed as a motion pursuant to Rule 60(b)(1), plaintiffs' appeal is effective immediately.

The instant motion was not filed within 10 days after entry of the judgment, and therefore fell outside the "uncompromisable" 10-day period for filing a Rule 59(e) motion. *Lichtenberg v. Besicorp Group Inc.*, 204 F.3d 397, 403 (2d Cir. 2000) (finding that Rule 6(b) "denies the court power to extend the time for a [] Rule 59(e) motion"); *see Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195, 197 (2d Cir. 2006) ("[U]nder Rule 6(b), courts may not extend the time for taking any action under Rule 59(e)."). Thus, "a request for permission to file a Local Rule 6.3 motion beyond the period allowed for filing a Civil Rule 59(e) motion cannot properly be treated as a request for permission to file a late Rule 59(e) motion." *Lichtenberg*, 204 F.3d at 404. Therefore, the Court construes the instant motion as one seeking relief from the judgment under Rule 60(b)(1). *See Feldberg*, 463 F.3d at 198-99 (finding that, because plaintiffs' "Rule 59(e) motion was improperly filed and was not supplemented until after the ten-day time limit for filing Rule 59 motions, we construe their Rule 59(e) motion as a Rule 60(b) motion for relief from judgment"); *United States v. Clark*, 984 F.2d 31, 33 (2d Cir. 1993) ("[M]otions filed after the 10-day period, no matter how styled, are to be treated as Rule 60(b) motions, which do not affect the

validity of a notice of appeal and do not restart the time for filing a notice of appeal.").

Furthermore, plaintiffs' Local Rule 6.3 motion seeking relief under Rule 60(b)(1) does not suspend the effectiveness of plaintiffs' notice of appeal. *See* Fed. R. App. Proc. 4(a)(4)(A); *Browder v. Director, Dept. of Corr. of Ill.*, 434 U.S. 257, 263 n.7 (1978) (" A motion for relief from judgment under Rule 60(b) [] does not toll the time for appeal from, or affect the finality of, the original judgment."); *Lichtenberg*, 204 F.3d at 403-04; *Clark*, 984 F.2d at 33 ("Rule 60(b) motions . . . do not affect the validity of a notice of appeal and do not restart the time for filing a notice of appeal."); *Collazo v. Sikorsky Aircraft Corp.*, No. 03 Civ. 1620 (MRK), 2005 WL 856839, at *2 (D. Conn. April 13, 2005). Therefore, because the instant motion does not affect the validity of the appeal previously filed by plaintiffs, the appeal has ousted this Court of its jurisdiction over the case, "except insofar as it is reserved to it explicitly by statute or rule." *Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992) (quoting *Ryan v. United States Line Co.*, 303 F.2d 430, 434 (2d Cir. 1962)); *see King v. First Amer. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002). As the Second Circuit has observed while considering a similar case:

> [T]he district court may grant a rule 60(b) motion after an appeal is taken only if the moving party obtains permission from the circuit court. In *Ryan*[, 303 F.2d at 434,] we noted that the district court can entertain and deny the rule 60(b) motion; however, if [the district court] decides in favor of it, then and then only is the necessary remand by the court of appeals to be sought. In other words, before the district court may grant a rule 60(b) motion, this court must first give its consent so it can remand the case, thereby returning jurisdiction over the case to the district court.

*Toliver*, 957 F.2d at 49 (internal citations omitted). Accordingly, although this Court retains jurisdiction to consider and to deny plaintiffs' motion, it may not grant the motion without plaintiffs first obtaining a remand from the Court of Appeals. According to plaintiffs' counsel, plaintiffs have already applied for a remand of this case from the Court of Appeals. However, this Court need not wait for a ruling by the Court of Appeals on plaintiffs' application for a remand because, for the reasons set forth below, this Court denies plaintiffs' motion.

### III. STANDARD OF REVIEW

Under Local Rule 6.3, reconsideration is appropriate only if "'the court overlooked matters or controlling decisions which, had they been considered, might reasonably have altered the result reached by the court.'" *United States v. United States Currency in the Sum of Ninety Seven Thousand Two Hundred Fifty-Three Dollars*, No. 95 Civ. 3982 (JG), 1999 WL 84122, at *2 (E.D.N.Y. Feb. 11, 1999) (quoting *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, No. 86 Civ. 6447 (JMC), 1989 WL 162315, at *4 (S.D.N.Y. Aug. 4, 1989) (internal quotation marks omitted)); *see Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."); *see also Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, 97 Civ. 6612 (SJ), 2006 U.S. Dist. LEXIS 7635, at *4 (E.D.N.Y. Feb.

15, 2006) ("The standard . . . is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court."). The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. *United States Currency*, 1999 WL 84122, at *2 (citing *Cohen v. Koenig*, 932 F. Supp. 505, 506 (S.D.N.Y. 1996)).

A strict standard also applies to motions made for relief from a final judgment pursuant to Rule 60(b). "Because 'final judgments should not be lightly reopened, Rule 60(b) may not be used as a substitute for timely appeal. . . . Since 60(b) allows extraordinary relief, it is invoked only upon a showing of exceptional circumstances.'" *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 190 (2d Cir. 2003) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61-62 (2d Cir. 1986)). According to the terms of the rule, relief may be granted for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than

one year after the judgment, order, or proceeding was entered or taken.

Fed. R. Civ. P. 60(b).

In this case, the Court construes plaintiffs' motion as seeking relief solely under the first provision of Rule 60(b), regarding "mistake, inadvertence, surprise, or excusable neglect."[2] Fed. R. Civ. P. 60(b)(1). "'Rule 60(b)(1) affords a party relief from a material mistake that changed the outcome of the court's judgment.'" *In re Bulk Oil (USA) Inc.*, Nos. 93 Civ. 4492, 4494 (PKL), 2007 WL 1121739,, at *10 (S.D.N.Y. April 11, 2007) (quoting *Matura v. United States*, 189 F.R.D. 86, 89 (S.D.N.Y. 1999)). However, Rule 60(b)(1) will not provide a movant an additional opportunity to make arguments or attempt to win a point already "carefully analyzed and justifiably disposed." *Id.* (internal quotation and citation omitted).

---

[2]To the extent that plaintiffs' motion could be construed as seeking relief under Rule 60(b)(6) – regarding "other reason[s] justifying relief" – the Court rejects such a claim. First, a court "may treat a motion to vacate a prior judgment as having been made under 60(b)(6) only if the other, more specific grounds for relief encompassed by the rule are inapplicable" – a situation not present in the instant case, as plaintiffs offer grounds which allege "mistake[s]" by this Court and, thus, are covered by Rule 60(b)(1). *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 55 (2d Cir. 1989); *see also Oparaji v. N.Y. Dept. of Educ.*, No. 00 Civ. 5953 (ENV)(VVP), 2006 WL 2220836, at *2 (E.D.N.Y. July 20, 2006). Second, relief under the catch-all provision of Rule 60(b)(6) is reserved for cases presenting "extraordinary circumstances." *Rodriguez v. Mitchell*, 252 F.3d 191, 201 (2d Cir. 2001). The Court finds that plaintiffs have not demonstrated any such extraordinary circumstance in this case that would merit relief from the judgment.

## IV. Discussion

Plaintiffs seek to reargue the merits of this Court's previous decision in the guise of arguing that the Court overlooked certain evidence and made mistakes in applying the law to plaintiffs' claims. However, as set forth below, plaintiffs have failed to demonstrate that the Court overlooked evidence or misapplied any controlling rule of law. Accordingly, the Court finds, pursuant to the strict standards governing motions for reconsideration under Local Civil Rule 6.3 and Rule 60(b)(1), that plaintiffs' motion must fail.

### A. The Testimony of Plaintiffs' Expert

Plaintiffs argue that the Court overlooked the evidence presented by plaintiffs' expert, Dr. R. Paul McCauley – a purported "police procedures expert." (Pls.' Mem. at 4.) Specifically, plaintiffs assert that the Court failed to properly consider Dr. McCauley's deposition testimony regarding the alleged errors made by the defendant police officers in detaining Goddard.

However, in its prior decision, the Court considered Dr. McCauley's testimony and found that it failed to establish a genuine issue of material fact as to the sole federal claim remaining in the case. First, the Court noted defendants' objection to the admissibility of Dr. McCauley's testimony – namely, that the proffered testimony was "speculative, conjectural, illogical, and not grounded in any authoritative source or expertise." (Dec. 18, 2006 Order, at 11 n.9 (quoting Defs.' MSJ Reply Br., at 18).) Next, the Court found that, "even if the expert's testimony is admissible, the conclusory assertions contained therein are insufficient to create any issues of fact on the question of deliberate indifference." (Dec. 18, 2006 Order, at 11 n.9.) Thus, plaintiffs' assertion that the Court failed to consider Dr.

McCauley's testimony is simply incorrect.

Furthermore, to the extent that plaintiffs argue that the Court was required, at the summary judgment stage, to find that Dr. McCauley's testimony established a genuine issue as to the defendants' state of mind, the Court rejects that argument. The Court was under no obligation to find, at the summary judgment stage, that the testimony of plaintiffs' expert was sufficient, by itself or combined with the evidence as a whole, to survive summary judgment, at least where, as here, the expert's testimony consisted solely of conclusory assertions based upon undisputed facts. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 187, 193 (2d Cir. 1987) (finding that an issue of fact at the summary judgment stage "cannot be established by mere speculation or idiosyncratic opinion, even if that opinion is held by one who qualifies as an expert"); *Estate of Detwiler v. Offenbecher*, 728 F. Supp. 103, 139-40 (S.D.N.Y. 1989) (granting summary judgment where "ample undisputed facts" contradicted the opinion of plaintiff's expert); *see also* 8 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*, § 62:716 ("Conclusory affidavits, even from expert witnesses, do not provide a basis upon which to grant or deny motions for summary judgment.").

Here, it is clear that Dr. McCauley's proffered testimony offered nothing more than his own conclusory opinion that the defendant officers *knew or should have known* that Goddard was attempting to commit "suicide by cop," and, as a result, should have taken greater measures to ensure Goddard's safety. (*See* Pls.' MSJ Mem. at 10.) Specifically, in the sole portion of Dr. McCauley's testimony mentioned in plaintiffs' brief opposing summary judgment, Dr. McCauley opined that "an experienced and reasonably trained police

officer would immediately have recognized that [Goddard] was attempting . . . 'suicide by cop'" when Goddard, while handcuffed, attempted to grab an officer's gun. (Pls.' MSJ Mem. at 10 (citing Okoli Decl., Ex. N).). As such, according to Dr. McCauley, upon realizing that Goddard was attempting "suicide by cop," the defendant officers should have taken greater measures to ensure that Goddard could not escape the officers' control, and that the measures they did take failed to comport with "proper police tactics and practice." (Pls.' MSJ Mem. at 11.)

However, Dr. McCauley's opinion is not based on any technical expertise that is necessary to resolve a highly complex factual issue; instead, Dr. McCauley's opinion is based solely on his own conclusions, drawn from the undisputed facts of this case, as to the state of mind of the defendant officers. *Cf. Tsakrios v. Toyota Motor Corp.*, No. 85 Civ. 8561 (SWK), 1987 U.S. Dist. LEXIS 9291, at *4 (S.D.N.Y. Oct. 15, 1987) ("[I]n cases in which 'the subject matter was sufficiently complex to require the aid of a technical expert in understanding it', the Second Circuit and the courts within it have [] been particularly reluctant to grant summary judgment. For that reason, motions for summary judgment in patent cases have been frequently denied.") (citing *Xerox Corp. v. Dennison Mfg. Co.*, 322 F. Supp. 963 (S.D.N.Y. 1971)) (internal citation omitted). Therefore, the Court was free to conclude that, notwithstanding Dr. McCauley's testimony, the undisputed facts, viewed in the light most favorable to plaintiffs, demonstrated that there was no genuine issue as to the matter upon which Dr. McCauley had opined – namely, whether the defendant officers had exhibited deliberate indifference to Goddard's safety needs.[3]  *See Raskin v. Wyatt*

*Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[A]n expert's report is not a talisman against summary judgment."); *O'Neill v. JC Penney Life Ins. Co.*, No. 97 Civ. 7467 (CPS), 1998 WL 661513, at *6 (E.D.N.Y. Aug. 6, 1998) ("Possibility and speculation, however, do not suffice on a motion for summary judgment, even if voiced by an expert."); *Talmage v. Trust*, 871 F. Supp. 1577, 1585 (E.D.N.Y. 1994) (finding that the "conclusory assertions" of plaintiff's expert, "in light of the evidence submitted by defendants, are not sufficient to raise a genuine issue of material fact"); *Cummiskey v. Chandris, S.A.*, 719 F. Supp. 1183, 1190 (S.D.N.Y. 1989) ("[T]he use of unreliable and unfounded expert testimony in this case is insufficient to defeat defendants' motion."); *see also Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 673 (D.C. Cir. 1977) (finding that Federal Rule of Evidence 703, regarding the bases of opinion

testimony – in the light most favorable to plaintiffs, reached a conclusion contrary to that of Dr. McCauley:

> [T]he record does not include evidence from which a reasonable jury could find that the defendant officers were deliberately indifferent such that the plaintiffs' constitutional claim may proceed. Far from being deliberately indifferent, the officers took several steps, though insufficient in hindsight, to ensure Goddard would not hurt himself or others once in custody. A reasonable jury could not find deliberate indifference where the officers removed dangerous items from Goddard, handcuffed him, called for ESU, and surrounded him with at least four officers while waiting for ESU. . . . Accordingly, summary judgment is granted with respect to plaintiffs' [deliberate indifference] claim arising under § 1983.

(Dec. 18, 2006 Order, at 11.)

---

[3] As set forth in the Order, the Court, viewing the evidence – including Dr. McCauley's proffered

testimony by experts, does not "prevent[] a court from granting summary judgment against a party who relies solely on an expert's opinion that has no more basis in or out of the record than [the instant expert's] theoretical speculations"). To find, as plaintiffs argue, that the conclusory assertions of an expert are sufficient to survive summary judgment, regardless of the merits of the underlying case, would effectively eliminate plaintiffs' obligation, pursuant to Rule 56(e), to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see CL-Alexanders Laing & Cruickshank v. Goldfeld*, 739 F. Supp. 158, 164 (S.D.N.Y. 1990) ("[W]hile expert opinion may be helpful, summary judgment can be defeated only by the allegation of specific facts."). Accordingly, because the Court fully considered the testimony of plaintiffs' expert and found it insufficient to create an issue of material fact that survives summary judgment, the Court declines to reconsider its prior decision on this basis.

## B. Other Grounds for Relief from the Judgment

Plaintiffs also argue that the Court failed to view certain facts in the light most favorable to plaintiffs, as required when considering a summary judgment motion. *See Amnesty Amer. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). The Court need not reiterate its prior findings in order to address plaintiffs' assertions. Instead, the Court simply notes that, as to all of the facts pointed to by plaintiffs in their brief, the Court, as set forth in the Order, specifically considered those facts in the light most favorable to plaintiffs, and, nevertheless, concluded that summary judgment was appropriate.

Next, plaintiffs argue that the Court erred in conducting the qualified immunity inquiry

because it failed to give "sufficient attention" to certain facts and to Dr. McCauley's testimony. However, plaintiffs fail to point to any fact or controlling decision that this Court overlooked in concluding that the defendant officers were shielded by qualified immunity. (*See* Dec. 18, 2006 Order, at 11-13.) As to Dr. McCauley's testimony, as discussed *supra*, this Court was under no obligation to find that the conclusory assertions of plaintiff's expert controlled the qualified immunity inquiry.

Finally, plaintiffs assert that this Court should reconsider its decision to dismiss plaintiffs' pendent state-law negligence claim. Yet, plaintiffs fail, once again, to point to any fact or controlling decision that this Court overlooked in reaching its determination. Instead, plaintiffs merely offer speculation as to the amount of time it would take to proceed to trial in state court and as to the possibility that defendants will seek to reopen discovery. However, such speculation cannot, pursuant to Local Civil Rule 6.3 and Rule 60(b), serve as a basis for relief from this Court's prior judgment. Therefore, because plaintiffs have not provided any basis to question the reasons set forth by this Court in support of its decision,[4] the Court adheres to its determination that plaintiffs' state claim should be dismissed without prejudice to

---

[4] The Court exercised its discretion to decline to exercise supplemental jurisdiction over plaintiffs' state claim because (1) it was "not clear" that discovery would need to be repeated if plaintiffs were to refile such a claim in state court, (2) addressing plaintiffs' state claim would require at least some "non-obvious" interpretations of New York State law, and (3) plaintiffs could recommence suit in state court, pursuant to NYCPLR. § 205, within six months of this Court's order dismissing the case – and, thus, would not be unduly prejudiced by dismissal of their state claim. (Dec. 18, 2006 Order, at 14-15.)

refiling in state court. (Dec. 18, 2006 Order, at 14.)

In sum, because "repetition of arguments" that have already received full consideration "fails to constitute a genuine ground for 60(b)(1) relief," *Peterson v. Valenzo*, 803 F. Supp. 875, 877 (S.D.N.Y. 1992), and because plaintiffs have failed to point to any evidence or controlling legal authority overlooked by this Court, plaintiffs' motion for reconsideration is denied in its entirety.

### V. CONCLUSION

For the foregoing reasons, plaintiffs' motion for reconsideration is DENIED in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 7, 2007
Central Islip, New York

* * *

The attorney for plaintiffs is Kenechukwu Chudi Okoli, Esq., 330 Seventh Avenue, 15th Floor, New York, New York 10001. The attorney for defendants is Michael A. Cardozo, Esq., Corporation Counsel of the City of New York, by Jennifer Amy Rossan, Esq., and Alan G. Krams, Esq., Assistant Corporation Counsels of the City of New York, 100 Church Street, New York, New York 10007.